Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 2689 | DATE | 3/2/2004 |
| CASE TITLE | Roquet vs. Arthur Andersen LLP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Status hearing held. For the reasons stated in the attached memorandum opinion and order, plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAR 0 3 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | GMA | 84 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

NANCY J. ROQUET and CORETTA ROBINSON, )
)
Plaintiffs, ) No. 02 C 2689
)
v. ) Judge John W. Darrah
)
ARTHUR ANDERSEN LLP, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Nancy J. Roquet ("Roquet") and Coretta Robinson ("Robinson"), brought a class action suit against Defendant, Arthur Andersen LLP ("Andersen"), alleging Defendant violated the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101-2109. Presently before the Court are: (1) Defendant's Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment on Issue of Existence of Mass Layoff, (2) Defendant's Motion for Summary Judgment, and (3) Plaintiffs' Cross-Motion for Partial Summary Judgment on Issue of Existence of Mass Layoff.

### BACKGROUND

Andersen was engaged in the business of accounting, auditing and tax and business and speciality consulting in various locations in the United States. (Def.'s 56.1(a)(3) Statement ¶ 3). In March and April 2002, Andersen had employed sites in more than eighty locations in the United States, including its employment site at 33 West Monroe Street, Chicago, Illinois. (Id., ¶ 8). Andersen's employees were assigned to one employment site. (Id., ¶ 11). Andersen's employment site at 33 West Monroe was not contiguous with any other Andersen location. (Id., ¶ 12). As of mid and late March 2002, Andersen employed in excess of 25,000 persons in its more than eighty employment sites throughout the United States. (Id., ¶ 25).

84

On March 14, 2002, the United States Department of Justice made its indictment of Andersen on certain criminal charges. (Def.'s 56.1(a)(3) Statement ¶ 24). On or about April 8, 2002, notices were sent to a number of Andersen's employees, including some employees at its 33 West Monroe employment site, notifying each employee to whom a notice was addressed that his or her employment would be terminated at a future date after a specified period of continued employment, referred to as "job search" time. Based on business needs, some employees' employment was extended beyond the initial anticipated termination date indicated in their notice. (Id., ¶ 26). Decisions as to who should receive notice on April 8, 2002, of future termination at each Andersen site were made by local management, based on their best assessment of which employees were least critical to serve what business was anticipated to remain after the indictment. (Id., ¶ 27). During his or her paid job search period, each employee continued to be an employee of Andersen. His or her employment terminated at the earlier of either (1) the end of his or her job search period, (2) his or her voluntary termination of employment or (3) the receipt of an offer of replacement employment by another firm. (Id., ¶ 29).

The notice Andersen gave a number of employees on or about April 8, 2002, did not terminate any employee's employment as of that date. (Def.'s 56.1(a)(3) Statement ¶ 30). The earliest termination of employment pursuant to the April 8, 2002 notices occurred on April 23, 2002. This was because every employee was given at least two weeks of paid job search employment after April 8, 2002. (Id., ¶ 31). On Or about April 11, 2002, Andersen sent several local government offices notices that it anticipated that there may be layoffs at certain employment sites, including 33 West Monroe, either in excess of 500 or 33 percent of its workforce at those employment sites over a 180-day period. No notices sent to government offices indicated a particular number of anticipated layoffs in a thirty-day period. (Id., ¶ 32).

2

At all relevant times between February 1, 2002, and April 8, 2002, the number of full-time employees at 33 West Monroe was in excess of 3,000. (Def.'s 56.1(a)(3) Statement ¶ 44). In the thirty-day period beginning with the period April 23, 2002, through May 22, 2002, and for several thirty day periods beginning each subsequent day thereafter, the number of full-time employees involuntarily terminated in each thirty-day period exceeded 50. (Id., ¶ 45). In the thirty-day period beginning with the period April 8 2002, through May 7, 2002, and going forward through the thirty-day period ending July 30, 2002, the number of full-time Andersen employees involuntarily terminated at 33 West Monroe was less than 500. (Id., ¶ 46).

The largest number of full-time employees terminated from its 33 West Monroe employment site in any thirty-day period with the period of April 8, 2002, through May 7, 2002, and going forward through the thirty-day period ending July, 30, 2002, was 465. (Def.'s 56.1(a)(3) Statement ¶ 47). In each thirty-day period beginning April 8, 2002, through May 7, 2002, and continuing through a thirty-day period ending July 30, 2002, the number of Andersen employees involuntarily terminated from its 33 West Monroe employment site was less than 33 percent of the full-time employees employed at that employment site. (Id., ¶ 48).

Andersen terminated 436 employees on 20 different dates at its 33 West Monroe employment site between April 23, 2002, and May 22, 2002. (Plaints.' 56.1(b)(3) Statement ¶ 53). Andersen terminated 154 employees on 22 different dates at its 33 West Monroe employment site between May 23, 2002, and June 21, 2002. (Id., ¶ 54). Andersen terminated 45 employees on 19 different dates at its 33 West Monroe employment site between June 22, 2002, and July 21, 2002. (Id., ¶ 55).

Andersen gave Roquet notice on April 8, 2002, that she was terminated as of April 23, 2002. (Plaints.' 56.1(b)(3) Statement ¶ 56). Andersen gave Robinson notice on April 8, 2002, that she was terminated as of May 15, 2002. (Id., ¶ 57).

## ANALYSIS

Andersen seeks to strike Plaintiffs' Cross-Motion for Partial Summary Judgment on Issue of Existence of Mass Layoff, arguing that Federal Rule of Civil Procedure 56 does not allow summary judgment be entered on an issue as sought by Plaintiffs. Instead, it only allows summary judgment on a claim.

Federal Rule of Civil Procedure 56(d) allows the granting of partial summary judgment on less than a whole claim. *See* Fed. R. Civ. P. 56(d); *Zapata Hermanos Sucessores v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2003). Accordingly, Defendant's Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment on Issue of Existence of Mass Layoff is denied.

The WARN Act requires employers of 100 or more full-time employees to give at least sixty days' advance notice of plant closings and mass layoffs to affected employees. *See* 29 U.S.C. § 2102(a). The only issue disputed by the parties in the instant case is whether the layoffs at the 33 West Monroe site constituted a "mass layoff" as required by the WARN Act.

The WARN Act defines a "mass layoff" as:

> (3) ... a reduction in force which –
> (A) is not the result of a plant closing; and
> (B) results in an employment loss at a single site of employment during any 30-day period for –
> (i)(I) at least 33 percent of the employees (excluding any part-time employees); and
> (II) at least 50 employees (excluding any part-time employees); or
> (ii) at least 500 employees (excluding any part-time employees)

29 U.S.C. § 2101(a)(B)(3). To trigger the notice requirement under this section, if the employer lays off fewer than 500 employees in an action unrelated to a plant closing, the number of employees laid off must exceed 50 and must also exceed 33 percent of the total number of employees. The Department of

4

Labor regulations governing WARN enforcement provides that these figures be calculated at a "snapshot" date, the date notice is first required to be given. *See* 20 C.F.R. § 639.5(a)(2).

The WARN Act also provides for aggregating the number of laid-off employees. Section 2102(d) states:

> (d) Determinations with respect to employment loss
>
> For purposes of this section, in determining whether a plant closing or mass layoff has occurred or will occur, employment losses for 2 or more groups at a single site of employment, each of which is less than the minimum number of employees specified in section 2101(a)(2) or (3) of this title but which in the aggregate exceed that minimum number, and which occur within any 90-day period shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter.

29 U.S.C. § 2102(d).

The Department of Labor regulations provide guidance to employers for deciding whether notice is required --

> In order for an employer to decide whether issuing notice is required, the employer should --
>
> (i) Look ahead 30 days and behind 30 days to determine whether employment actions both taken and planned will, in the aggregate for any 30-day period, reach the minimum numbers for a plant closing or a mass layoff and thus trigger the notice requirement; and
>
> (ii) Look ahead 90 days and behind 90 days to determine whether employment actions both taken and planned each of which separately is not of sufficient size to trigger WARN coverage will, in the aggregate for any 90-day period, reach the minimum numbers for a plant closing or a mass layoff and thus trigger the notice requirement. An employer is not, however, required under section 3(d) to give notice if the employer demonstrates that the separate employment losses are the result of separate and distinct actions and causes, and are not an attempt to evade the requirements of WARN.

20 C.F.R. § 639.5(a)(1).

The parties do not dispute that there was no thirty-day period in which 500 full-time employees experienced an employment loss. The largest number of full-time losses in any thirty-day period was 465. The parties also do not dispute that there was no thirty-day period in which 33 percent of the full-time employees suffered an employment loss, as 465 is less than 33 percent of the 3,000 plus full-time employees at the 33 West Monroe employment site. Based on these undisputed facts, a mass layoff did not occur under 29 U.S.C. § 2101(3).

The parties do dispute whether 29 U.S.C. § 2102(d) applies. Defendant argues that Section 2102(d) only applies if less than fifty employees were terminated in a thirty-day time period. Under Defendant's construction of 2102(d), the "minimum number of employees specified in section ... 2101(a)(3)" applies only if 2101(a)(3)(B)(i)(ii), more than 50 employees, is not met. In support of this construction, Defendant argues that the provision "minimum number" only speaks in the singular, not the plural; and between, 50 and 500, there is only one minimum. However, as set out above, 2102(a)(3)(B)(i)(II) provides "*at least* 50 employees"; and subsection III provides "*at least* 500 employees". (Emphasis added). Both provide a minimum number in establishing different bases for determining a "mass layoff".

Plaintiffs argue that Section 2102 establishes criteria for a mass layoff independent of Section 2101(3) if the layoffs (1) affected two or more groups, (2) neither 2101(a)(3)(B)(i) or 2101(a)(3)(B)(ii) are met, and (3) the terminations were not the result of separate and distinct actions and causes.

A court "should not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous." *See Unites States v. Franz*, 886 F.2d 973, 978 (7th Cir. 1989).

Contrary to Defendant's argument, the plain language of Section 2102(d), "each of which is less than the minimum number of employees specified in section 2101(a)(2) or (3)", does not support the narrow interpretation that only 2101(a)(3)(B)(i)(II) sets out the minimum number of employees referenced in 2102(d) as fifty. Congress chose to use "2101(a)(3)" in the statute. Congress did not, but could have easily, refer specifically to Section 2101(a)(3)(B)(i)(II) or simply 50 employees in referring to the minimum number in Section 2101(a)(2). Section 2101(a)(3) allows two different definitions of a mass layoff, either of which, if met, require notice be given. If a layoff meets the requirements of 2101(a)(3)(B)(i), which requires *both* an employment loss of 33 percent and a minimum of "at least 50 employees", then 2101(a)(3)(B)(ii) need not be addressed, and 2102(d) would not apply. Similarly, if a layoff meets the requirements of 2101(a)(3)(B)(ii), which only requires a total of a minimum of "at least 500 employees" laid off, then 2101(a)(3)(B)(i) need not be addressed, and 2102(d) would not apply. Clearly, Congress intended that Section 2102(d) only applies if 2101(a)(2) or (3) are not met.

Although no reference beyond the language of the statute is necessary, a discussion of legislative history raised by the Defendant is appropriate. Defendant cites to a Senate Amendment to Section 2102 to support its argument. This Amendment stated:

> The Senate Amendment provides for the determination of a plant closing or mass layoff based on aggregation of smaller employment losses. Under the Amendment, employment losses at a single site for 2 or more groups of employees, each of which is less than 50 employees, but which in the aggregate total at least 50 employees, that occur within a 90-day period, will be considered a closing or layoff subject to notification....

H.R. Conf. Rep. No. 100-576, at 1050 (1988).

However, a closer look at the legislative history of the WARN Act fails to support Defendant's narrow reading of the exception and the Senate Amendment. The Conference Agreement for the above Senate Amendment clarified that "the requirement that a mass layoff of 50 to 499 employees must affect

7

33 percent of the employees at a particular employment site also applies to this section [2102d]. The '33 percent' requirement was inadvertently omitted from the language approved by the senate." H.R. Conf. Rep. No. 100-576, at 1050 (1988). This Conference Agreement fails to support Defendant's interpretation that 2101(a)(3)(B)(i)(I) must first be met before any other part of 2101(a)(3)(B) is analyzed. However, it does support the interpretation that there are two distinct methods of meeting, and not meeting, the requirements of 2101(a)(3) as set out above.

Further support for the interpretation adopted by the Court is found in the Conference Agreement to the Senate Amendment concerning the definition of "mass layoff". The Conference Agreement modified the Senate Amendment so that the 33 percent requirement only applies to mass layoffs that involve more than 49 but less than 500 employees. The Conference found that:

> layoffs involving 500 or more people are likely to cause significant economic disruption in local communities, as well as the obvious disruption for the individuals involved. Thus, the rationale for advance notice is strong -- the need for individuals and communities to begin planning for dislocation before the dislocation occurs. The justification for a 33 percent requirement for layoffs before notice is required has been the representation by business interests that small layoffs of 50 or 100 or even 200 employees at a single site with perhaps a workforce of perhaps a thousand or more employees are such a regular part of business that requiring notice in these circumstances would be unduly burdensome. Because a layoff of 500 employees at a site of employment is a significant and unusual action, even in a large workforce of 2000 or more employees, the requirement of advance notice in these situations should not place an undue burden on employees.

H.R. Conf. Rep. 100-576, at 1046 (1988). Thus, Congress specifically chose two different definitions of mass layoff that required different criteria that were not interrelated.

Defendant's interpretation is also contrary to the Department of Labor's regulation cited above which informs employers to look ahead and back 90 days to determine whether employment actions, each of which separately are not of sufficient size to constitute a mass layoff, will in the aggregate for

8

any 90-day period reach the minimum *numbers* and thus trigger the notice requirement. If an employer only need be concerned with 2102(d) if less than 50 employees were laid off within a 30-day period, the Department of Labor could have indicated that this inquiry first be made. Instead, the Department of Labor informs employers to add the employees laid off in a 90-day period to determine if the minimum *numbers* have been reached.

Defendant also cites to other district courts that have found that if the statutory minimum of fifty employees is met, the requisite statutory period is thirty days. The cases cited are not persuasive. In *Reyes v. Greater Texas Finishing Corp.*, 19 F. Supp. 2d 709 (W.D. Texas 1998) (*Reyes*), the court found "[a]fter a thorough reading of the statute, regulations, legislative history and relevant case law..." that since the statutory minimum of fifty persons was met, the requisite statutory period was thirty days. In support of its holding, the *Reyes* court quoted the above Senate Amendment and cited to 29 U.S.C. § 2101(a)(3). However, the *Reyes* court failed to indicate whether 2101(a)(3)(B)(i)(II) had also been satisfied and did not address any of the other legislative history cited above.

Similarly, in *Washington v. Aircap Indust. Corp.*, 1992 WL 547993 (D. S.C. July 8, 1992), the court failed to address whether 2101(a)(3)(B)(i)(II) had also been met when limiting the statutory period to thirty days. Furthermore, the *Washington* court was not making a decision on the merits of the plaintiff's WARN Act claims but was deciding whether class certification was appropriate. *See also, Kelly v. Tech Inc.*, 195 F.R.D. 48 (S.D. Fla.) (failing to address 2102(a)(3)(B)(i)(II) requirement and not addressing any argument that 90-day period was appropriate).

Lastly, under Defendant's interpretation, an employer of a large number of employees, such as the Defendant, could evade the requirements of the WARN Act by always laying off over 50 employees in a 30-day period but making sure that the number of employees laid off in a 30-day period did not

9

exceed 500. For example, a large employer could layoff 499 people every 31 days and avoid the disclosure requirement, including Section 2102(d), as long as 499 employees did not constitute 33 percent of the employees. Such result would be contrary to Congress's purpose in enacting the statute, including 2102(d), which is intended to prevent the evasion of the statute by the manipulation of the number of employees laid off.

## CONCLUSION

A mass layoff occurs pursuant to Section 2102(d) if (1) employment losses for two or more groups at a single site of employment; (2) each of which is less than the minimum number of employees specified in section 2102(a)(2) or (3), failing to meet the requirements of 2102(a)(2) or 2102(a)(3)(B)(i)(I) and 2102(a)(3)(B)(i)(II) or 2102(a)(3)(B)(ii); (3) but which in the aggregate exceed that minimum number within any 90-day period shall be considered a plant closing or mass layoff; (4) unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter.

As stated above, the parties do not dispute that a mass layoff did not occur as defined in 2101(a)(3). Therefore, based on the above statutory construction, a determination of whether a mass layoff occurred based on Section 2102(d) must then be made. The undisputed facts show that there were employment losses for two or more groups at 33 West Monroe, each of which are less than the minimum number of employees specified in section 2102(a)(3), but which in the aggregate of 90 days exceed 500 employees, specifically, 635 employees.

Furthermore, Andersen does not present any undisputed facts or argument that the employment losses were the result of separate and distinct actions and causes and were not an attempt by Andersen to evade the requirements of this chapter.

Accordingly, Andersen's Motion for Summary Judgment is denied; and Plaintiffs' Motion For Partial Summary Judgment on Issue of Existence of Mass Layoff is granted.

For the foregoing reasons, Defendant's Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment on Issue of Existence of Mass Layoff is denied. Defendant's Motion for Summary Judgment is denied. Plaintiff's Cross-Motion for Partial Summary Judgment on Issue of Existence of Mass Layoff is granted.

Dated: March 2, 2004

JOHN W. DARRAH
United States District Judge